JIJONES, Judge.
This application for supervisory writs has been filed by Richard Stalder, Secretary of the Department of Public Safety and Corrections (hereafter DOC). The DOC seeks relief from orders issued by the trial judge for Section “I” of the Criminal District Court for the Parish of Orleans ordering the DOC to take physical custody of thirteen (13) prisoners within thirty days or be subjected to contempt proceedings. The defendants have all been sentenced to serve terms of imprisonment at hard labor in the custody of the DOC.
The District Attorney for the Parish of Orleans has filed an opposition to the relator’s writ application. In the opposition, the District Attorney cites no legal authority to support the authority of the trial judge to issue the complained of orders. Rather the District Attorney merely echoes the policy reasons advanced in the per curiam, filed by the trial judge.
In its per curiam, the trial judge gave the following reasons for ordering the DOC to take physical custody of the inmates:
Following the recent escapes from Or-leansjjParish Prison by inmates who were either convicted of or awaiting trial on murder charges, this Court reviewed the hundreds of cases in which the defendants have been sentenced to imprisonment at hard labor with an eye towards culling from that number the most violent and dangerous offenders. That effort yielded the thirteen (13) above captioned defendants. Mindful of its obligation to the citizens of Orleans Parish to eliminate from their community the most threatening criminals, this Court then ordered Mr. Stalder to take custody of these men and transfer them to the Department Correctional facilities for the duration of their sentences. If Mr. Stalder was unable to do so, then this Court would inquire into what circumstances precluded compliance. It should be noted that the instant writ application is actually premature in that Secretary Stalder does not automatically face a contempt citation for failure to take custody of the listed prisoners, but rather only if he is unable to demonstrate good cause for his failure to do so.
It is the position of this Court that the citizens of the City of New Orleans are entitled to be apprised of why those most dangerous offenders are not being removed from the city limits. By having those violent criminals continue to reside in this city, the citizenry is being subjected to a continuing danger posed by the possibility of these felons escaping onto the *32 city’s streets. It is only fair that the Department of Corrections either protect the citizens of Orleans Parish from this danger or explain why it cannot.

DISCUSSION AND LAW

The issue before this Court is whether a trial judge can order the DOC to take physical custody of prisoners sentenced to imprisonment at hard labor or whether the DOC is free to leave those prisoners in the physical custody of the Orleans Parish Sheriffs Department.
The relator argues first that any actions against the DOC must be filed in either the Federal District Court for the Middle District of Louisiana, the court in which all actions pertaining to overcrowding in Louisiana jails must be filed, see Hamilton v. Morial, 644 F.2d 351 (1981), or in state court in East |3Baton Rouge Parish pursuant to La. R.S. 15:821.[1] Because we find that the trial court had no authority to order the DOC to take physical custody of the defendants, we pretermit a discussion of the venue issue.
La.R.S. 15:824 provides in pertinent part:
A. Notwithstanding any provision of law to the contrary, any individual subject to confinement in a state adult penal or correctional institution shall be committed to the Louisiana Department of Public Safety and Corrections and not to any particular institution within the jurisdiction of the department. The director of corrections shall assign each newly committed inmate to an appropriate penal or correctional facility. The director may transfer an inmate from one such facility to another, insofar as the transfer is consistent with the commitment and in accordance with treatment, training and security needs established by the department; however, no juvenile may be transferred to a penal or correctional facility for persons committed by a court having criminal jurisdiction except in accordance with the provisions of R.S. 15:1062.
B. (l)(a) In the event any individual has been committed to the department for confinement which is or has been delayed or prevented after final sentence by court order restricting the department from institutionalizing the individual, or when the individual is not institutionalized in a state penal or corrections institution because of lack of facilities under the control of the department, or the department otherwise refused to accept the individual for confinement, which resulted or has resulted in the individual being confined in a parish jail or institution after final sentence, or when he is being held in the parish jail without bail, pending an appeal, the department shall pay to each parish sheriff, or to the governing authority of those parishes in which the governing authority operates the parish jail, for keeping and feeding the individual in the parish jail |4the sum of twenty-one dollars per day from date of sentencing until the individual is confined in a penal or correctional institution under the supervision of the department.
(b) In addition, the department shall reimburse only the cost of extraordinary medical expenses incurred in emergency circumstances when the health of the inmate requires the use of the closest services available. The department shall require an inmate to file a claim for reimbursement with any available health or medical insurer in accordance with R.S. 15:831.
(c) Each sheriff shall file a monthly report with the department to be paid on a monthly basis and shall include with any request for reimbursement for extraordinary medical expenses an explanation of why state provided services were not used.
(2) When the state makes payment in accordance with this Subsection, no addi *33 tional compensation from the parish gov-eming authority shall be paid to the sheriff for the care of those prisoners being held for the department.
(3) In any case in which a person has been committed to the department but is being confined in a parish jail or institution, the department shall accept into custody on a priority basis, as established by the Department of Public Safety and Corrections, any such individual who has been determined by the sheriff who has custody of the individual to be dangerous, an escape risk, or afflicted with a physical or mental disorder, upon the request of the sheriff.
[[Image here]]
C. Notwithstanding any provision of law to the contrary, only individuals actually sentenced to death or confinement at hard labor shall be committed to the Department of Corrections.
D. In the event the Department of Public Safety and Corrections cannot accept an individual because of lack of facilities under the control of the department, the department may, subject to legislative appropriation, enter into a contract with a law enforcement district to house additional prisoners. If the contract requires the district to acquire additional bedspace by purchase or construction of new facilities, or renovation or addition to existing facilities, the department shall pay the sum of seven dollars per day |5for each prisoner provided for by such contract. This payment shall be in addition to any other payment required under this Section and shall be paid for the duration of the period necessary to service the debt incurred by the district in acquiring such bedspace by purchase or construction of new facilities or renovation or addition to existing facilities. Such debt service period shall be specified in the contract between the department and the district. Any such debt must receive the prior approval of the State Bond Commission of Louisiana.
This statute clearly envisions that the Department of Corrections may be unwilling or unable to take physical custody of prisoners sentenced to hard labor. In such an event, the department is obligated to pay the local sheriff or jailer for the costs of keeping such a prisoner. Even if the prisoner is deemed an escape risk, the DOC is obligated only to take such a prisoner on a priority basis to be established by the department and only upon the sheriffs request.[2] La.R.S. 15:824 B(3). The legislature by these enactments has manifested a clear intent to leave the physical placement of prisoners within the jurisdiction of the DOC alone.
In this regard, we note that by 1992 La. Acts 394, the legislature added paragraph D to La.R.S. 15:824. This paragraph provides for additional payment to the parish sheriffs for housing state prisoners, specifically payments when contracts require the local jail authority to purchase or construct new facilities to house prisoners which the Department of Public Safety and Corrections cannot accept because of a lack of facilities. Therefore, as recently as 1992, the legislature recognized that the department’s inability to accept prisoners might cause overcrowding in the parish jails and provided additional relief to the sheriffs in compensation thereof.
|6While this court is sympathetic to the problems attendant to housing state prisoners in local jails, it is not the prerogative of the courts to supplant the clear mandate of Legislative enactments. Moreover, it is difficult for this court to understand how the trial court could meet its stated objective of having the most dangerous offenders removed from the city limits when the court readily admits in its per curiam that the recent escapees were “either convicted of or awaiting trial on murder charges.” Certainly, the trial judge would have no authority to order the DOC to take immediate physical custody of any pre-trial detainees, even though many of them may be more dangerous than the offenders who have actually been convicted and sentenced to serve a term of imprisonment in the custody of the DOC. Thus, the *34 means selected to address the perceived problem would appear to be inappropriate.
For the above reasons, the writ application is granted. All orders of the trial court which require the Department of Corrections to take physical custody of prisoners or be subjected to contempt proceedings are vacated.

WRIT GRANTED; ORDERS VACATED.

. La.R.S. 15:821 provides that the domicile of the Department of Corrections and its divisions shall be East Baton Rouge Parish. Generally, a defendant’s domicile is the parish of proper venue. La.C.C.P. art. 42. La.R.S. 13:5104 provides that venue as to political subdivisions is the judicial district court of the parish where the subdivision is located or where the cause of action arose; where there is a specific statute defining domicile, the parish of domicile is the proper venue. See Revolta v. RTA, 607 So.2d 963 (La.App. 4th Cir.1992), writ not considered 612 So.2d 46 (La.1993).

. It is significant to note that the sheriff is not a party to these proceedings. Rather, the actions were admittedly instituted by the trial judge.